**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

_____

**JACQUESE FRANKLIN HARRELL, SR.,**
                                **Petitioner,**

**v.**                                                    **Case No. 12-cv-1074**

**BRIAN FOSTER, Warden,**
**Green Bay Correctional Institution,**
                                **Respondent.**

_____

## DECISION AND ORDER

In this decision and order, I address pro se petitioner Jacquese Harrell's petition for a writ of habeas corpus under 28 U.S.C. § 2254.

### I. Background

In the early morning of October 20, 2007, Victoria Jackson was shot and killed while driving a van in Milwaukee. The police interviewed a witness who placed petitioner at the scene and claimed to have heard shots and seen petitioner with a gun. The police also interviewed two witnesses who claimed to have heard petitioner admit to the shooting. When police interviewed petitioner in the house where he was staying, they conducted a limited search and found a gun under a seat cushion. That gun was forensically tied to the bullet casings and fragments found at the murder scene. A jury convicted petitioner of first-degree reckless homicide while armed, under Wis. Stat. §§ 940.02(1), 939.63, and unlawfully possessing a firearm as a felon, under Wis. Stat. § 941.29.

### II. Discussion

Petitioner raises two claims in his petition: (1) that he received ineffective assistance of trial counsel and (2) that search of the couch cushions which led to the discovery of a

gun violated his Fourth Amendment rights.

## A. Statute of Limitations

Respondent asks me to dismiss this petition because it was filed outside of the one-year limitation period under 28 U.S.C. § 2244(d). Section 2244(d)(1) imposes a one-year limitation on filing a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. For petitioner, his one-year limitation period began to run on "the date on which the [state court] judgment became final by the conclusion of direct review or the expiration of time for seeking such review." § 2244(d)(1)(A). However, this one-year period is tolled if petitioner files a "properly filed" post-conviction motion in state court. § 2244(d)(2); *see also Pace v. Guglielmo*, 544 U.S. 408 (2005).

The parties agree that petitioner's one-year period for filing a § 2254 petition began to run on January 26, 2011 (upon the expiration of petitioner's 90-day period for seeking United States Supreme Court review). Thus, his one-year period for filing a § 2254 petition was set to expire on January 26, 2012. However, petitioner placed a post-conviction motion under Wis. Stat. § 974.06 in the prison mail on January 16, 2012, and the clerk of courts received the motion on February 9, 2012. Respondent argues that this motion did not toll his one-year period because it was "filed" after the one-year period on February 9, 2012, the date the clerk of courts received it. Under the mailbox rule announced in *Houston v. Lack*, a pro se prisoner "files" a motion "at the time petitioner deliver[s] it to the prison authorities" for mailing. 487 U.S. 266, 276 (1988). The mailbox rule applies to prisoners filing pro se habeas petitions, *see Jones v. Bertrand*, 171 F.3d 499, 500–02 (7th Cir. 1999), as well as to Wisconsin prisoners filing state post-conviction motions, *see Ray v. Clements*,

700 F.3d 993, 1004–05 (7th Cir. 2012) (holding "that the mailbox rule applies to a state pro se prisoner's post-conviction filings unless the state where the prisoner was convicted clearly rejected the rule," and that "Wisconsin has fully embraced the *Houston* mailbox rule"). Thus, as of January 16, 2012, petitioner's one-year limitation period was tolled while the post-conviction motion was pending. The post-conviction motion was still pending when petitioner filed his § 2254 petition on October 12, 2012, and therefore the petition is not time-barred.

## B.    Illegal Search

I may not grant federal habeas relief to a state prisoner on the ground that evidence obtained in an unconstitutional search was introduced at trial unless the state court did not provide petitioner with a full and fair opportunity to litigate his Fourth Amendment claim. *Stone v. Powell*, 428 U.S. 465, 494 (1976). A petitioner receives a full and fair opportunity to litigate if: "(1) he has clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of his fourth amendment rights and (2) the state court has carefully and thoroughly analyzed the facts and (3) applied the proper constitutional case law to the facts." *Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2002) (quoting *Pierson v. O'Leary*, 959 F.2d 1385, 1391 (7th Cir. 1992)). It is irrelevant whether the state court decided the issue correctly; the state must merely consider the appropriate body of case law. *Id.* Even an "egregious error" is not enough to support a writ of habeas corpus; "a blunder, no matter how obvious, matters only in conjunction with other circumstances that imply refusal by the state judiciary to take seriously its obligation to adjudicate claims under the fourth amendment." *Id.* at 564; *see also Cabrera v. Hinsley*,

324 F.3d 527, 532 (7th Cir. 2003) ("'[F]ull and fair' guarantees the right to present one's case, but it does not guarantee a correct result.").

Petitioner clearly informed the state court of the factual basis of his Fourth Amendment claim and argued that those facts amount to a constitutional violation. He filed a motion to suppress, and the trial court held a suppression hearing. The trial court denied that motion, and its decision was reviewed and affirmed by the court of appeals. The Wisconsin Supreme Court denied discretionary review of the issue. The appeals court described his claim as follows:

> Police officers went to the house on 25th and Burleigh on October 21, 2007, looking for Harrell because he was a suspect in the Jackson shooting. One of the officers knocked on the door, and Harrell answered and stepped out. The officer told Harrell that a detective wanted to talk to him and they waited in the officer's car. The police did not arrest or handcuff Harrell at that point, although the officers testified that they would not have let Harrell leave if he had wanted to. When the detective, Gilbert Hernandez, arrived, Harrell was in the officer's car. According to Hernandez, Harrell was getting nervous because folks were gathering near the car, and rather than talk to Hernandez in his squad car, Harrell wanted to go back inside the house. According to Hernandez, "there was a group of people out there, and this was the indication – appearance of a snitch. He didn't want to be out there." The officers led Harrell into the house, and Hernandez remained temporarily outside. Harrell was not under arrest or in handcuffs then either.

> One of the officers who led Harrell back into the house testified at the suppression hearing that before he would let Harrell sit on one of the chairs, the officer checked it to make sure there were no weapons that Harrell could get:

> Q    Why did you check the chair he wanted to sit in?

> A    Just in case there was any weapons or, you know, anything that is going to hurt any of us that were in the house.

> The officer looking beneath the seat cushion found "suspected cocaine." Then:

> A    There was another chair not far from that chair. [Harrell] started walking over there, and that's when I went over to that chair and checked the cushion, and that's where I found a

firearm.

The gun was loaded. The officer's partner testified that they searched the second chair because "this is where we want to sit him now." The gun they found in the second chair was the gun to which the State's evidence tied to the cartridge casings and bullet pieces connected to the Jackson shooting. The chair in which the officer found the gun was about five feet from the chair where they found the suspected cocaine.

Harrell testified at the suppression hearing, and denied that he asked the officers to go back inside the house. He also testified that he did not give the officer permission to search the house. Harrell told the trial court that the officer searched the first chair before he would let Harrell sit on it; they let him sit in the chair after they found the suspected cocaine; and that they then searched the couches and other chairs in the room, which was when they found the gun.

As noted, the trial court denied Harrell's motion to suppress the gun. It ruled that the officers were more credible than Harrell. The trial court thus found that Harrell asked to go back into the house to speak to the officers. The trial court also determined that the officers did nothing wrong by checking the chairs for weapons.

Resp. Ex. D at 4–6, ECF No. 19-4.

The appeals court addressed the merits of his Fourth Amendment claims and thoroughly analyzed the facts of petitioner's claim, stating:

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "It is axiomatic that the 'physically entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) (quoted source omitted). Thus, "'searches and seizures inside a home without a warrant are presumptively unreasonable. *Id.* at 749 (quoted source omitted). This "presumption," of course, may under appropriate circumstances, be overcome: "the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other hand, the degree to which it is needed for the promotion of legitimate governmental interests.'" *United States v. Knights*, 534 U.S. 112, 118–119 (2001) (quoted source omitted).

*Terry v. Ohio*, 392 U.S. 1, 27–28 (1968), recognized that under the Fourth Amendment's ban against unreasonable searches and seizures, a law-enforcement officer may search a person to ensure the officer's safety if the officer has reason to believe that the person may have committed a crime and that the person may be "armed and dangerous." "The officer need not be absolutely certain that the

5

individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27. Although *Terry* does not permit officers to enter houses without authorization in order to investigate suspicious activity, *State v. Stout*, 2002 WI App 41, ¶ 15, 250 Wis. 2d 768, 80–781, 641 N.W.2d 474, 479, it does permit them to protect themselves from threats of immediate danger once they are lawfully in a house, *id.* ¶ 24 ("These safety concerns may arise wherever an officer legitimately encounters an individual, whether in a public place or in a private residence or hotel room."). Thus, if officers have a "reasonable suspicion" that a person may have access to a weapon, a limited search is permitted. *Id.* ¶ 26. This is especially true, somewhat paradoxically, in the home, where "unlike an encounter on the street or along a highway, an in-home arrest puts the officer at the disadvantage of being on his adversary's 'turf.'" *Maryland v. Buie*, 494 U.S. 325, 333 (1990). Thus, the police may lawfully search an area from where an arrestee might grab a weapon, but not beyond it. *Chimel v. California*, 395 U.S. 752, 763, 768 (1969). Given *Terry*'s recognition of the need for officer safety, this analysis also applies where the officers are lawfully in the home and are reasonably concerned that the person to whom they are talking can do them harm, even though he or she has not yet been arrested. *See Terry*, 392 U.S. at 27; *Stout*, 2002 WI App 41, ¶¶ 24–26.

Harrell does not dispute that the officers went to where they believed Harrell was staying because they suspected that he was involved in the Jackson shooting. Thus, the two aspects of *Terry* were satisfied: (1) the officers suspected that Harrell had committed a violent crime; and (2) reasonable prudence dictated that they keep Harrell from having possible access to a gun. Although he asserts that the officers were not lawfully in the house, the trial court found that by virtue of Harrell's house-sitting status, he could and did give them permission to continue their questioning of him inside the house. Those findings are not clearly erroneous. *See State v. Pickens*, 2010 WI App 5, ¶ 39, 323 Wis. 2d 226, 244–245, 779 N.W.2d 1, 10 (common dominion authorizes persons to give consent for search).

Once the officers found the suspected cocaine, of course, they could also legitimately search the area near Harrell as an incident to Harrell's pending arrest, as well as to ensure their safety when they directed him to sit in the second chair. *See Chimel*, 395 U.S. at 763 ("A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."); *see also State v Denk*, 2008 WI 130, ¶ 33, 315 Wis. 2d 5, 18, 758 N.W.2d 775, 782 ("[W]arrantless search 'may be incident to a subsequent arrest if the officers have probable cause to arrest before the search.") (quoted source omitted).

Resp. Ex. D at 7–9, ECF No. 19-4.

I cannot say that the appeals court applied the wrong constitutional case law to petitioner's Fourth Amendment claim. In analyzing the initial search that turned up the suspected cocaine, the appeals court applied *Terry v. Ohio* and its progeny, the correct body of law for analyzing pre-arrest searches. In analyzing the second search that turned up the gun, the appeals court applied *Chimel v. California* and its progeny, the correct body of law for analyzing searches incident to arrest. Because the state court applied the correct body of constitutional law, I cannot review its decision to determine whether it was correct. Nor is it relevant, as petitioner argues, that the appeals court applied different case law than the trial court. *Cabrera*, 324 F.3d at 532 (rejecting the argument that "the fact that the basis of the decision changed from one court to another shows that the determinations did not meet the test for a full and fair hearing"). Thus, I will deny petitioner's petition for a writ of habeas corpus based on his Fourth Amendment claim.

## C.     Ineffective Assistance of Counsel

To establish a claim for ineffective assistance of trial counsel, a petitioner must show that his lawyer performed deficiently and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). To establish deficient performance, a petitioner must demonstrate that his lawyer's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. *Id.* at 687–88. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* To establish prejudice, a petitioner must show that there is a reasonable probability that but for his

lawyer's deficient performance, the result of the proceeding would have been different. *Id.* at 694.

Petitioner argues that his trial counsel was ineffective in three respects. First, he argues that counsel failed to impeach two key prosecution witnesses. Second, he argues that counsel failed to properly investigate his alibi and to call a witness who could provide him with an alibi. Third, he argues that counsel failed to object to testimony by detectives that was inadmissible hearsay. The Wisconsin Court of Appeals adjudicated petitioner's ineffective assistance of counsel claims on the merits; therefore I may grant relief only if the adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. § 2254(d).[1]

## 1.     Failure to impeach

The Wisconsin Court of Appeals described the background of petitioner's first ineffective-assistance claim as follows:

> John David, one of Harrell's friends, testified that he and Harrell were at a Milwaukee nightspot, then called Remedies but previously known as Magnolia's, when they left the club on October 20th at the 2 a.m. closing in the car David was driving, a Monte Carlo. Harrell was sitting in the front passenger seat. Suddenly, David heard one or two shots coming from inside the car. He looked over at Harrell and saw that Harrell had a gun in his hand. Although David testified that he did not remember in what hand Harrell held the gun, he had previously told a Milwaukee police detective that the gun was in Harrell's right hand. Additionally, although David denied it at the trial, he also told the detective that after the shots, he saw in his rear-view mirror and to his right, a van that was in the right-passenger lane, and that

---

[1] Under § 2254(d), I may also grant relief if the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. However, in this case, there is no plausible claim that the state court's decision was based on an unreasonable determination of the facts.

he saw the van swerve. The van, which then crashed into a light pole, was the van Jackson was driving when she was shot. . . .

Antwain Childs, another friend of Harrell's friends, was also staying at the house on 25th and Burleigh. He testified that Harrell went out on the night Jackson was shot, and that before he left he saw Harrell take a gun with him. Childs said it was "[a] nine." He identified the gun tied to Harrell as the gun he saw Harrell take with him. Childs also told the jury that some time around 3 a.m., Harrell returned to the house with "John," who was driving a Monte Carlo; Harrell told Childs that something had gone terribly wrong:

> Q    And did you tell Detective [David] Salazar that [Harrell] said cuz, I think I fucked up. I was telling cuz that you all ain't no killers and I let my window down and took my gun and got to shooting, boom, boom, boom, and a van had an accident?
>
> A    Yep.

Resp. Ex. D at 2–4, ECF No. 19-4.

The court rejected petitioner's claim that counsel was ineffective in failing to impeach David and Childs, reasoning as follows:

> Harrell claims that his trial lawyer did not "effectively impeach" David, the driver of the car from which David said Harrell fired his gun. He contends that his trial lawyer should have impeached David with an earlier conviction, proof of which Harrell establishes by a copy of an entry from the Wisconsin Circuit Court Access website. David's conviction was, however, for disorderly conduct, a misdemeanor. This is hardly the substance of earth-shattering impeachment, assuming that the trial court would have even permitted its use for that purpose under Wis. Stat. Rule 906.09. Given the testimony by both Walker and Childs that Harrell admitted to the shooting, Harrell has not, at the very least, shown *Strickland* prejudice.
>
> He also claims that David should have been impeached because the police had arrested him for the Jackson killing and he thus had the motive to: (1) minimize his own culpability, (2) maximize Harrell's culpability, and (3) curry favor with the State. Here again, the testimony by both Walker and Childs demonstrates that Harrell has not shown the requisite *Strickland* prejudice.
>
> Finally, he claims that in light of David's testimony at Harrell's preliminary examination that David drank "about" ten drinks of "Hennesey" at Remedies/Magnolia's before he and Harrell drove away, his trial lawyer should have impeached "David's ability to observe the alleged shooting." We disagree.

9

First, although David was most likely impaired and should not have been driving, he was obviously able to at least rudimentarily manipulate the controls of a car. Second, as the State points out, it would not take much observational ability for a driver to know if someone was shooting a gun out of the front-passenger window. Harrell has not shown *Strickland* prejudice in connection with this complaint either.

Harrell also claims that his lawyer was ineffective because she did not point out to the jury that Childs was on parole when he was first interviewed by the police. Harrell claims that this was a "clear motive to falsify testimony." The motive, however, cuts both ways—Childs would certainly be in trouble if he lied to police, and Harrell has not indicated how the motive he posits outweighs the motive to be honest. He has not shown *Strickland* prejudice.

Resp. Ex. D at 10–12, ECF No. 19-4.

Because the court applied the correct *Strickland* standard, the court's decision was not contrary to clearly established federal law. Similarly, the court's analysis under *Strickland* cannot be said to be an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Under *Strickland*, petitioner must show that his attorney's performance was both deficient *and* prejudicial. *Strickland*, 466 U.S. at 687. The appeals court gives several reasons why it believed that even if petitioner's trial counsel had impeached the prosecution's witnesses, the result of the case would not be different. I cannot say that the court's analysis was unreasonable.

## 2.    Failure to investigate alibi defense

Petitioner also argues that his trial counsel performed deficiently by failing to investigate his alibi and call Jarvis Brent as a witness to testify to his alibi. According to the appeals court, Brent signed an affidavit in which he "avers that he was with Harrell continuously from 'around 8:00pm' on '[t]he night before Jacquese Harrell was arrested' until Harrell left with Brent's cousin something after 'around 3:00–4:00am.'" Resp. Ex. D at 12, ECF No. 19-4. The court rejected this claim also, reasoning:

As the State points out, however, David testified that he was with Harrell at Remedies/Magnolia's until 2 a.m., and Childs testified that he was with Harrell at the house on 25th and Burleigh the evening of October 19th and the morning of October 20th until Harrell left. Harrell's trial lawyer did not ineffectively represent him by not calling Brent as a witness because in light of all the other evidence, not calling Brent does not weaken our confidence in the reliability of the jury's verdicts.

Resp. Ex. D at 12, ECF No. 19-4.

Again, the court applied the correct *Strickland* standard in finding that counsel's failure to call Brent as a witness did not affect the outcome of the trial, and thus its decision was not contrary to clearly established federal law. Nor was the court's reasoning contrary to clearly established federal law as determined by the United States Supreme Court. Petitioner admitted in his court of appeals brief and in his habeas brief that his attorney did investigate his alibi but chose not to call Brent as a witness "because he had been convicted of a crime or crimes." Pet'r's Br. in Supp. at 11–12, ECF No. 23. It was not unreasonable for the appeals court not to question counsel's strategic decision in not calling Brent, and I will not do so now. *Strickland*, 466 U.S. at 690 (stating that strategic choices made after investigation "are virtually unchallengable.").

### 3.      Failure to object to inadmissible hearsay

Finally, petitioner claims that his trial counsel was ineffective for failing to object to testimony of the detectives which he considers inadmissible hearsay. Specifically, petitioner challenges the detectives' testimony regarding what other prosecution witnesses told them. The appeals court found that these statements were admissible under Wis. Stat. § 908.01(4)(a) because they were prior statements that were inconsistent with the declarants' trial testimony. Because this is a state law issue, I may not review the state court's decision. *See Buie v. McAdory*, 341 F.3d 623, 625 (7th Cir. 2003) ("[A]n error of

state evidence law cannot be the basis of federal collateral relief.")

Thus, I will deny petitioner's petition for a writ of habeas corpus based on his ineffective assistance of counsel claims.

### III. Conclusion

**THEREFORE, IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 14th day of October, 2014.

s/ Lynn Adelman

_____
LYNN ADELMAN
District Judge